UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER MORGAN,

        Plaintiff,                      Civil Action No. 12-12071

             v.                District Judge Paul D. Borman
                                Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

      Plaintiff Peter Morgan ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff has filed a Motion to Remand [Doc. #12] and a Motion for Summary Judgment [Doc. #9]. Defendant has filed what is captioned a Motion for Summary Judgment [Doc. #18] that is, in effect, a response to the Plaintiff's Motion for Summary Judgment, as well as another Motion for Summary Judgment [Doc. #22]. All have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).[1]

      For the reasons discussed below, I recommend that Plaintiff's Motion for Summary Judgment pursuant to the fourth sentence of 42 U.S.C. 405(g) [Docket #9] be GRANTED

---

[1]       Plaintiff filed two separate pleadings. He first filed a motion for either an award of benefits or further fact-finding pursuant to the fourth sentence of 42 U.S.C. 405(g). *Docket #9.* In the second motion, he requested alternatively that a remand be granted for the consideration of newer evidence pursuant to the sixth sentence of the same statute. *Docket #12.*

to the extent that this case be remanded for further fact-finding, and that his Motion for Remand pursuant to the sixth sentence of 42 U.S.C. 405(g) [Docket #12] be DENIED.

For the same reasons, Defendant's Motions for Summary Judgment [Doc. #18 and #22] should both be DENIED to the extent that they seek affirmance of the administrative decision.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on June 30, 2008, alleging disability as of March 12, 2008. (Tr. 121-125).  After the initial claim denial, Plaintiff requested an administrative hearing, held on May 13, 2010 in Detroit, Michigan (Tr. 31).  Administrative Law Judge ("ALJ") John Rabaut presided.  Plaintiff, represented by attorney Thomas Bertino, testified (Tr. 34-49), as did Vocational Expert ("VE") Dr. Lois Brooks (Tr. 49-60).  In an undated decision, ALJ Rabaut found that Plaintiff was not disabled[2] (Tr. 30).  On April 9, 2012, the Appeals Council denied review (Tr.1-6).  Plaintiff filed the present action on May 8, 2012.

## BACKGROUND FACTS

Plaintiff, born July 11, 1971, was 38 at the time of the administrative decision (Tr. 121).  He completed 11th grade and worked previously as a mover, hi-lo driver, laborer, and janitor (Tr. 157, 163).  He alleges disability as a result of back problems and radiating lower extremity pain and numbness (Tr. 152).

### A.  Plaintiff's Testimony

Plaintiff testified that he was placed in special education classes in high school but did not experience problems reading, writing, or paying bills (Tr. 35).  He stated that he currently lived alone in an apartment (Tr. 35).  He indicated he had difficulty climbing the stairs to his

---

[2]The Appeals Council order states that the ALJ's decision was filed on June 15, 2010 (Tr.1).

second floor unit (Tr. 36).  He alleged disability as a result of a March 12, 2008 disc herniation (Tr. 36).  He indicated that in January, 2009, he underwent a laminectomy, discectomy, and foraminotomy at L2-3 (Tr. 37).  Plaintiff stated that the surgery "made things worse," adding that he experienced chronic pain and leg numbness (Tr. 38).  In addition to back problems, he reported that he experienced neck pain and upper extremity numbness due to a bulging cervical disc (Tr. 39-40).  On a scale of one to ten, Plaintiff characterized his pain as at least a "ten" (Tr. 40).  He stated this his discomfort was worsening, adding that he was now seeking advice from a new surgeon (Tr. 41).  Plaintiff reported that he currently took pain killers, muscle relaxants, and antidepressive medication (Tr. 42).  He reported that the side effect of drowsiness required him to take daily naps, but that pain nonetheless caused nighttime sleep disturbances (Tr. 43).

Plaintiff testified that he had been advised not to undergo physical therapy (Tr. 43). He stated that he lost his driver's license approximately eight years before the hearing (Tr. 44-45).  He stated that his mother performed household chores for him (Tr. 45).  He denied shopping, adding that he spent all of his time watching television (Tr. 45).  He stated that friends visited him but he rarely left home (Tr. 45).  He indicated that back pain required him to change positions from sitting to standing every five minutes (Tr. 46).  He stated that his most comfortable position was reclining (Tr. 46).

Plaintiff denied computer use (Tr. 47).  He stated that he had been prescribed a cane by his family doctor (Tr. 47-48).  He reported attending psychological therapy sessions once every two weeks (Tr. 48).

### B.  Medical Evidence

### 1.  Treating Sources

In April, 2008, Plaintiff received chiropractic treatment for back pain (Tr. 229).  He exhibited leg pain and an antalgic gait  (Tr. 229).  Chiropractor Ellen Lazar noted "slow but constant" progress (Tr. 236).  A May, 2008 nerve conduction study showed the possible presence of lumbar radiculopathy (Tr. 249).   The same month, an MRI of the lumbar spine showed a bulging disc at L2-L3 with moderate spinal canal stenosis but no nerve root impingement (Tr. 238, 246).  In July, 2008, Benedict Go, M.D. noted Plaintiff's complaints of ongoing pain (Tr. 251).  The same month, Dr. Go completed a medical examination report, finding that due to lumbar radiculopathy, Plaintiff was unable to work indefinitely (Tr. 289-290).  He described Plaintiff's condition as "deteriorating" (Tr. 290).

The following month, neurosurgeon Stephen Sullivan, M.D. recommended decompressive laminectomy infusion and pain therapy (Tr. 291).  Dr. Sullivan noted that Plaintiff had been "unable to tolerate physical therapy" (Tr. 291).  In October, 2008, neurologist Karol Zakalik, M.D. noted Plaintiff's symptoms, observing that Plaintiff was "friendly, bright, alert and articulate . . ." (Tr. 325).  Imaging studies of the cervical spine showed "mild disc space narrowing and spondylosis at C3-C4" (Tr. 382).  Plaintiff began physical therapy in December, 2008 but was discharged later the same month "secondary to" surgery scheduled for the following month (Tr. 296).  Physical therapy notes state that Plaintiff continued to experience "significant pain" and a range of spinal motion reduced by 90 percent (Tr. 304, 308).  Bilateral straight leg raise tests were positive (Tr. 309).

A January, 2009 MRI of the lumbar spine showed that Plaintiff's condition had "slightly worsened" since the previous May (Tr. 329).  A discectomy was performed without complications (Tr. 313, 317-318, 327-328).  Following surgery, Plaintiff demonstrated a

limited range of lower extremity motion but a full range of motion in the upper extremities (Tr. 314). Post-surgery notes created in March, 2009 state that Plaintiff reported continuing back and leg pain (Tr. 323). Imaging studies showed the presence of scar tissue at L2-L3 (Tr. 346).

June, 2009 physical therapy notes state that Plaintiff's discomfort was increased with prolonged sitting or standing (Tr. 333). Therapy notes state that he was unable to perform heel and toe walking (Tr. 334). Dr. Go opined that Plaintiff experienced disabling back and neck pain (Tr. 424-425). Neurologist John L. Zinkel, M.D. noted that recent imaging studies showed a "successful decompression" (Tr. 338). Dr. Zinkel observed that Plaintiff's gait was "very stiff legged as if he can't bend his knees," adding that he had "never seen this type of gait before" (Tr. 338).

In September, 2009, Plaintiff denied a history of substance abuse at a psychological intake exam (Tr. 384). Plaintiff denied taking special education classes (Tr. 385). Intake notes state that he appeared well groomed and was fully oriented (Tr. 386). His affect and mood were deemed appropriate (Tr. 386). Plaintiff reported sleep disturbances, hopelessness, and concentrational difficulties (Tr. 387). He was assigned a GAF of 55[3] (Tr. 388). He failed to show for two subsequent counseling sessions (Tr. 394-395). A December, 2009 imaging study of the lumbar spine showed moderate disc space narrowing and spondylosis at L2-L3 with scar tissue (Tr. 345-346). In January, 2010, Christine Zakar and Fredrick S. Junn, M.D. found that Plaintiff should undergo additional imaging studies (Tr.

---

[3]

A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

339-340).  An MRI from the same month showed "[n]o canal or foraminal stenosis . . . at any lumbar level (Tr. 344).

In March, 2010, Dr. Go opined that Plaintiff had been unable to work since April, 2008, noting that Dr. Junn had recommended a second back surgery (Tr. 348, 426).  The same month, psychological treating records state that Plaintiff was depressed as a result of his functional limitations (Tr. 390).  In April, 2010, Dr. Go completed a Physical Residual Functional Capacity Questionnaire, finding that Plaintiff experienced the medication side effects of fatigue, dizziness, and insomnia (Tr. 397).  Dr. Go found that Plaintiff experienced "constant" pain and was unable to perform even low stress jobs, or sit or stand for more than 10 minutes (Tr. 398).  He found that Plaintiff was unable to lift even 10 pounds (Tr. 399).  The same month, an MRI of the lumbosacral spine showed "degenerative endplate changes" at L2-L3 (Tr. 402).

The same month, psychologist Kirk Duncan found that Plaintiff experienced moderate cognitive, concentrational, and social limitations (Tr. 403, 408).  Dr. Duncan also found that Plaintiff experienced sleep disturbances as a result of anxiety (Tr. 409).  Dr. Duncan found moderate and/or extreme limitation in activities of daily living, social functioning, and concentration (Tr. 410-411).  He concluded that Plaintiff was disabled (Tr. 413).

## 2.  Non-Treating Sources

In August, 2008, Elizabeth W. Edmond, M.D. performed a consultative examination on behalf of the SSA (Tr. 256-259).  Plaintiff reported that he worked as a piano mover before becoming disabled (Tr. 256).  He reported shooting right leg pain and generalized leg numbness and weakness (Tr. 256).  Plaintiff indicated that he took Vicodin and Tylenol #4 (Tr.256).   He demonstrated a full range of cervical motion, but was unable to squat (Tr.

257).  Dr. Edmond found no evidence of disc herniation but found "no reason to doubt [Plaintiff's] complaint of pain" (Tr. 257).  He exhibited a full range of strength in all extremities except the left leg (Tr. 257).  She found that Plaintiff required the use of a cane (Tr. 257).

The same month, Suzann M. Kenna, M.A. and Judith Kovach, Ph.D. performed a psychological examination of Plaintiff on behalf of the SSA (Tr. 260-262).  He reported problems sleeping (Tr. 261).  He appeared in contact with reality with good motivation (Tr. 261).  He was assigned a GAF of 50-55 (Tr. 262).

In September, 2008, Rom Kriauchiunas, Ph.D. completed a non-examining Mental Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff experienced moderate difficulties in understanding, remembering, and carrying out detailed instructions; maintaining attention for extended periods; interacting appropriately with the public; and responding appropriately to workplace changes (Tr. 264).  Dr. Kriauchiunas found that Plaintiff could perform "simple, low-stress, unskilled work on a sustained basis" (Tr. 265).  Dr. Kriauchiunas also completed a Psychiatric Review Technique, finding the presence of a cognitive and affective disorders (Tr. 268, 270).  Under the "'B' Criteria," Dr. Kriauchiunas found moderate deficiencies in maintaining social functioning and "concentration, persistence, or pace" (Tr. 277).

The same month, William Lockhart performed a Physical Residual Functional Capacity Assessment, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for up to six hours in an eight-hour day; and push and pull without limitation (Tr. 282).  The Assessment limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 283).  Lockhart found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 284-285).

-7-

### 3.  Material Submitted Subsequent to the June 15, 2010 Administrative Opinion

March, 2009 imaging studies showed the presence of scar tissue at L2-L3 (Tr. 429). In February, 2012, Dr. Go opined that Plaintiff required the use of a cane (Tr. 221).  A February 25, 2012 vocational rehabilitation analysis based on the treating records states that Plaintiff was not a candidate for rehabilitation (Tr. 427-428).  James Fuller, M.A. cited Dr. Go's findings of limitation and consultative examiner Dr. Edmond's finding that Plaintiff required a walking aid (Tr. 427-428).  Fuller rejected the ALJ's findings that Plaintiff could perform gross and fine manipulations, noting that the need to hold a cane while standing precluded the jobs of assembler and inspector (Tr. 428).

### C.  Vocational Expert Testimony

Dr. Lois Brooks categorized Plaintiff's past relevant work as a mover as very heavy and semiskilled and work as a Hi-lo driver as medium to heavy/semiskilled[4] (Tr. 50).  The ALJ posed the following set of hypothetical limitations to the VE:

> [A] full range of sedentary with no climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs; occasional balance, stoop, crouch, kneel, and crawl; avoiding all exposure to unprotected heights; avoiding concentrated exposure to excessive vibration.  Work would be limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production, involving only simple work-related decisions, and with few, if any workplace changes.  Just kind of looking at that as, as an outset,

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

could such an individual perform Mr. Morgan's past work? (Tr. 51-52).

The VE testified that given the above limitations, the individual would be unable to perform any of Plaintiff's past relevant work, but could perform the sedentary, unskilled work of an assembler (1,800 jobs in the regional economy); visual inspector (900); and packaging jobs (800) (Tr. 52).  The VE then considered the ALJ's additional restrictions:

> "[T]he ability to sit or stand at will, provided that the employee's not off task more than 10 percent of the workday; and the ability to utilize a handheld assistive device for prolonged ambulation or uneven terrain; the contralateral upper extremity could be used to carry objects up to the exertional limitation; and the same environmental and nonexertional limitations, would that change your answer to the previous hypothetical? (Tr. 53).

The VE responded that the addition of a sit/stand option to the original hypothetical question would eliminate approximately 10 percent of the above-stated job positions (Tr. 53).   The VE stated that her testimony regarding the sit/stand option was not based on the Dictionary of Occupational Titles ("DOT"), but rather, from her own "professional experience" (Tr. 53).  The VE stated that if the individual were unable to engage in sustained work activity for eight hours each day as a result of either physical or psychological problems, all work would be precluded (Tr. 54-55).  The VE stated that the additional limitations of "no constant rotation/flexion/extension of the neck, and only occasional overhead reaching and handling," would not reduce the above-stated job numbers (Tr. 55).

In response to questioning by Plaintiff's attorney, the VE stated that the need to recline for four hours in an eight-hour workday would preclude all work (Tr. 56).  She stated that if the individual were limited to only occasional handling and fingering, all of the above-stated jobs would be eliminated (Tr. 58).

### D.    The ALJ's Decision

Citing the medical records, ALJ Rabaut found that Plaintiff experienced the severe impairments of "degenerative disc disease fo the lumbar spine status post laminectomy, discectomy, and foraminotomy at L2/3; degenerative disc disease of the cervical spine; adjustment disorder with depressed mood; retrolisthesis L2 on L3; bilateral cubital tunnel syndrome" but that none of the conditions met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 19-20). He stated that he also considered Plaintiff's "history of lumbar radiculopathy" (Tr. 19). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following additional limitations:

> [R]equires a sit/stand option; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, crouch, kneel, and crawl; should not perform constant rotation, flexion, or extension of the neck; can occasionally perform overhead reaching and handling; can frequently handle object[s] (gross manipulation); can frequently finger (fine manipulation of items no smaller than the size of a paper clip); is limited to jobs which can be performed while using a hand held assistive device required only for uneven terrain or prolonged ambulation[.] [T]he contralateral upper extremity can be used to lift and carry up to the exertional limits; should avoid concentrated exposure to excessive vibration; should avoid all exposure to unprotected heights; work is limited to simple, routine, and repetitive tasks, performed in a work environment free of fast paced production requirements, involving only simple, work related decision, and with few, if any work place changes (Tr. 20-21).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the jobs of a assembler, inspector, or packager (Tr. 30).

The ALJ found that Plaintiff's allegations of disability were undermined by his sporadic work history (Tr. 28). The ALJ noted that as of August, 2008, Plaintiff demonstrated full motor strength in all extremities (Tr. 27). He found that the allegations of limitation stood at odds with his continued ability to live by himself in a second floor

-10-

apartment (Tr. 22).  He also noted that an MRI of the cervical spine taken in October, 2008 showed "very mild dis[c] bulging" and no nerve root impingement (Tr. 24).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff's motion for remand pursuant to the fourth sentence of 42 U.S.C. § 405(g) includes eight arguments in support of either an award of benefits or further fact-finding. *Plaintiff's Brief* at 15-34, *Docket #9.*  His first argument contains four assignments of error concerning the hypothetical question to the VE.  First, he notes that the hypothetical question included a sit/stand at will option but argues that the ALJ erred by failing to state at what intervals Plaintiff would be permitted to stand or sit.  *Id.* at 16-17.  He also argues that "[t]here was no limitation given to the VE with respect [to] manipulation of objects no smaller than a paperclip," asserting that this error was "fatal." *Id.* at 17.  He also seems to argue that the ALJ erred by failing to include the need for a cane in the hypothetical limitations posed to the VE, contending in effect that the need for a cane while standing would prevent him from performing fine manipulations.   *Id.* at 17-18. Finally, he contends that the hypothetical modifiers of "simple, routine, repetitive tasks" were insufficient to

address his moderate deficiencies in concentration, persistence, or pace. *Id.* at 18-19.

In Plaintiff's second argument, he takes issue with the ALJ's rejection of Dr. Go's disability opinions, arguing on a related note that the ALJ also erred by failing to credit Dr. Edmonds' consultative findings. *Id.* at 19-25. Third, he disputes the finding that his allegations of disability were not credible, arguing that the ALJ's reasons for rejecting the claims were based on a impermissibly narrow reading of the record. *Id.* at 25-27. Fourth, he argues that the ALJ erred by rejecting Dr. Duncan's opinion, asserting that the ALJ had a duty to recontact the psychologist to clarify ambiguous findings. *Id.* at 27-29. He argues fifth that the ALJ erred by failing to articulate a "function by function assessment" of the RFC findings as required by SSR 96-8p . *Id.* at 30-31.

Sixth, Plaintiff contends that the ALJ failed to consider the Step Two "severe" impairments of bilateral cubital tunnel syndrome and depression in crafting the hypothetical question and RFC. *Id.* at 31-32. In argument seven (mistyped as a second argument six) he contends that the ALJ did not consider the combined effect of his severe and non-severe impairments, revisiting his earlier argument that he required the use of a cane. *Id.* at 32-33 Eighth, Plaintiff argues generally that the ALJ flouted the Social Security Rulings in making the non-disability finding.

Plaintiff filed a separate motion to argue that remand is appropriate pursuant to the sixth sentence of 42 U.S.C. § 405(g), notwithstanding the 35-page brief devoted to the original eight issues. *Plaintiff's Brief, Docket #12.* Here, he argues that evidence submitted after the administrative opinion, namely, James Fuller's vocational analysis and Dr. Go's February 23, 2012 statement that Plaintiff required the use of a cane, provides grounds for a remand for further fact-finding. *Id.* at 2.

-13-

### A.  The Vocational Testimony

### 1.  Basic Principles

Vocational testimony given in response to the hypothetical question constitutes substantial evidence only if the question accurately portrays the individual's physical and mental impairments. *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987). While the Sixth Circuit has rejected the proposition that all of the claimant's maladies must be listed verbatim, "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Webb v. Commissioner of Social Sec.* 368 F.3d 629, 632 (6th Cir.2004).

### 2.  Plaintiff's Arguments Regarding the Vocational Testimony

Plaintiff is correct that a sit/stand option, stated either in the RFC or hypothetical question, should include the required frequency of position changes. *See* SSR 96–9,1996 WL 374185, *7 (July 2, 1996) ("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing").  However, his contention that the ALJ failed to include the interval at which he required position changes in the hypothetical question to the VE is belied by the record.  The ALJ's amended question to the VE included a sit/stand "at will" limitation (Tr. 53). That means that the hypothetical individual could sit or stand whenever he wanted. SSR 96–9.  The VE responded that the inclusion of a sit/stand at will option would reduce her original job numbers by 10 percent (53).  Consistent with that testimony, the ALJ reduced the VE's original job numbers by 10 percent in the administrative decision (Tr. 30).

In sub-arguments two and three, Plaintiff next asserts that his need for a cane while standing would preclude the use of the right hand for frequent handling and fingering as

required for most sedentary work (Tr. 58).   While Drs. Go and Edmond found that Plaintiff required the use of an "ancillary ambulatory aid," presumably for walking, these findings do not suggest he would also need the device simply for standing for the short periods indicated by a sit/stand at will option (Tr. 257, 363).

Plaintiff's fourth argument fares no better.  Here, he contends that the hypothetical limitations posed to the VE did not account for his moderate deficiencies in concentration, persistence, or pace ("CPP").  To be sure, the failure to account for moderate deficiencies in concentration, persistence and pace in the hypothetical question constitutes reversible error. *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.). However, an ALJ is not required to include verbatim the phrase "moderate deficiencies in concentration, persistence, and pace" or other talismatic language in the hypothetical. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001); *Webb, supra,* 368 F.3d at 633.

Plaintiff's relies on *Brown v. Commissioner of Social Sec.* 672 F.Supp.2d 794, 797 (E.D.Mich.,2009),   which found that the hypothetical modifiers of "simple, routine, repetitive, one or two step tasks" were insufficient to account for moderate deficiencies in CPP.  In contrast here, the ALJ limited Plaintiff to "simple, routine, and repetitive tasks performed in a work environment free of fast-paced production, involving only simple work-related decisions, and few, if any workplace changes" (Tr. 51-52).  While Plaintiff contends that the VE's job findings nonetheless have production quotas, substantial evidence supports the conclusion that the his deficiencies in CPP, while moderate, do not preclude these jobs.

Further, Plaintiff's position that "simple," "routine," or "repetitive" are automatically insufficient to account for moderate limitations in CPP is not supported by Sixth Circuit case law. *See Smith, supra.*   To the contrary, the evidence of record and the ALJ's opinion must

be considered in their entirety in determining whether the hypothetical limitations adequately describe the claimant's limitations. *See Schalk v. Commissioner of Social Sec.,* 2011 WL 4406824, *11 (E.D.Mich.August 30, 2011)("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, at *7 (E.D.Mich. June 16, 2008)).

### B.  The Treating Physician Analysis

Plaintiff faults the ALJ for declining to adopt Dr. Go's April , 2010 disability opinion. *Plaintiff's Brief* at 19-23.  (Tr. 397-401).  He argues, in effect, that the ALJ's stated reasons for rejecting the opinion amount to a distortion of the record.  *Id.*  He also contends that the ALJ erred by ignoring the import of Dr. Edmond's consultative finding that the allegations of pain were credible.  *Id.* at 24-25.

"[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted)(citing *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir.2004)).  Pursuant to 20 C.F.R. § 404.1527(c)(2-6),

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion. *Wilson,* at 544.

-16-

Moreover, "the Commissioner imposes on its decision makers a clear duty to 'always give good reasons'" for the weight accorded a treating source's opinion. *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir.2011)(citing 20 C.F.R. § 404.1527(c)(2)).

The Plaintiff argues that the ALJ's  analysis of Dr. Go's opinion founders on an erroneous interpretation of the record.   To be sure, in discounting Dr. Go's April, 2010 opinions, the ALJ considered the frequency, duration, and nature of the treating relationship as well Dr. Go's role in referring Plaintiff to various neurologists (Tr. 22-26).  However, while the ALJ provided "reasons" for discounting Dr. Go's opinion, they were not "good reasons" as required by § 404.1527(c).

The ALJ acknowledged that Dr. Go's opinion was supported by Dr. Junn's finding that Plaintiff required additional surgery (Tr. 340) but rejected both physicians' opinions on the basis that Dr. Zinkel had found that "it was not clear that further surgery would be required" (Tr. 25).  The ALJ also cited Dr. Zinkel's observation that he "had never before seen an individual with a gait such as the claimant was exhibiting ever before" (Tr. 25, 338). The ALJ found that Dr. Zinkel's observation also reflected poorly on Plaintiff's credibility (Tr. 25).

First, Dr. Zinkel's observations do not contradict Dr. Junn's opinion that Plaintiff required further surgery.  Dr. Zinkel actually stated that it was "not clear that further evaluation for surgery would benefit patient," after noting that Plaintiff had already undergone three evaluations "as to what to do with his back" (Tr. 338).  Even assuming that Dr. Zinkel's observations had actually contradicted Dr. Go's opinion,  "[t]he mere fact that a treating physician's opinion is contradicted by another source is not a sufficient basis for its  rejection." *Harris  v.  Commissioner  of  Social  Sec.* 2012  WL  313743,  *5

-17-

(E.D.Mich.,January 11, 2012)(citing *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009))

("Nothing in the regulations indicates, or even suggests, that the administrative judge may

decline to give the treating physician's medical opinion less than controlling weight simply

because another physician has reached a contrary conclusion.").

In addition, while the ALJ found that Dr. Zinkel's observation that Plaintiff's unusual

gait reflected "poorly upon [his] credibility," the consultative source's statement  does not

support the conclusion that Plaintiff was malingering  (Tr. 25, 338).  To the contrary, Dr.

Zinkel's observation was followed by a recommendation for additional neurological testing

(Tr. 338).  While the ALJ correctly pointed out that the "issue of disability is reserved for the

Commissioner," as set forth in § 404.1527(d), that did not relieve the ALJ of the duty to

provide "good reasons" for discounting Dr. Go's opinion as required by § 404.1527(d).

Because the ALJ's reasons amounted, at best, to a debatable interpretation of a consultative

opinion, a remand for a proper articulation of the treating physician analysis is warranted.

While the ALJ did not necessarily err in failing to cite  Dr. Edmonds' August, 2008

consultative finding that Plaintiff's allegations of pain were credible,  *See Kornecky v.*

*Commissioner of Social Security*, 167 F. App'x 496, 508, 2006 WL 305648, *8–9 (6th Cir.

February 9, 2006) (*citing Loral Defense Systems—Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th

Cir.1999))("it is well settled that 'an ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party' "), Edmonds'

opinion also lends support to Dr. Go's disability opinion.

While the ALJ's failure to articulate good reasons for rejecting Dr. Go's opinion

requires a remand, Plaintiff, as discussed below, has not established an "overwhelming" case

for disability and as such, is entitled to a remand for further fact-finding rather than an award

of benefits.  *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th
Cir.1994).

### C.  The Credibility Determination

The credibility determination, guided by SSR 96-7p, describes a two-step process for
evaluating symptoms.  "First, the adjudicator must consider whether there is an underlying
medically determinable physical or mental impairment. . .that can be shown by medically
acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186, *2.  The second
prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity,
persistence, or functionally limiting effects of pain or other symptoms are not substantiated
by objective medical evidence," the testimony must be evaluated "based on a consideration
of the entire case record."*Id.* [5]  An ALJ's credibility is entitled to deference by the reviewing
court.  *See Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir. 1997)(because
"an ALJ is charged with the duty of observing a witness's demeanor and credibility," the
"findings based on the credibility of the applicant are to be accorded great weight.")

---

[5]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the
factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity
of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv)
The type, dosage, effectiveness, and side effects of any medication you take
or have taken to alleviate your pain or other symptoms; (v) treatment, other
than medication, you receive or have received for relief of your pain or other
symptoms; (vi) Any measures you use or have used to relieve your pain or
other symptoms ... and (vii) Other factors concerning your functional
limitations and restrictions due to pain or other symptoms."

As stated by Plaintiff, the ALJ discounted the allegations of disability on the basis of the following factors: (1) the medical records did not show that Plaintiff experienced medical side effects, (2) he did not receive significant treatment after January, 2009, (3) Dr. Zinkel's findings, (4) Plaintiff lived alone and, (5) he lived on a second floor. *Plaintiff's Brief* at 25 (citing Tr. 22, 25, 27, 28).

As discussed in Section **B,** above, I disagree with the ALJ's interpretation of Dr. Zinkel's statement.  However, otherwise, the credibility determination does not provide a basis for remand.  While the ALJ discounted the allegations of medication side effects, he stated that he nonetheless incorporated those allegations in the RFC by limiting Plaintiff to simple, unskilled work (Tr. 28).  Further, the ALJ did not err in noting Plaintiff's allegations of disability were undermined by his ability to live alone on the second floor of an apartment building (Tr. 28).   The ALJ permissibly considered Plaintiff's "poor" work history in rejecting his claims (Tr. 28).  Aside from the above-discussed reliance on Dr. Zinkel's comments, the deference generally accorded the credibility determination is appropriate here.

### D.  Kirk Duncan's Opinion

Plaintiff argues here that the ALJ's rejection of Duncan's April, 2010 psychological assessment stands at odds with his adoption of an earlier, September, 2009 assessment by another employee of the same establishment.  *Plaintiff's Brief,* at 27-29.  Plaintiff contends, in effect, that the tension between the September, 2009 and April, 2010 findings required the ALJ to recontact those sources for clarification as required by 20 C.F.R. § 404.1512.  *Id.*

The fact that the September, 2009 and April, 2010 assessments contain contradictory findings, without more, did not require the an ALJ to recontact either of these sources.  "[A]n Administrative Law Judge need recontact a medical source only if the evidence received

-20-

from that source is inadequate for a disability determination." *DeBoard v. Commissioner of Social Sec.,* 2006 WL 3690637, *5 (6th Cir. December 15, 2006)(citing 20 C.F.R. § 404.1512(e)). "Absent a gap in the record, the ALJ has no duty to recontact the physician." *Starkey v. Commissioner of Social Sec.,* 2008 WL 828861, *4 (W.D.Mich. March 26, 2008) (*citing Johnson v. Barnhart,* 138 Fed. Appx. 186, 189, 2005 WL 1414406, *3 (11th Cir. June 17, 2005); SSR 96-5p). The inconsistent findings by the two assessors does not amount to a "gap" in the records. As such, remand on this basis is not warranted.[6]

### E. SSR 96-8p

Plaintiff further argues that the ALJ failed to include a "function-by-function" analysis of his exertional and non-exertional impairments as required by SSR 96-8p. *Plaintiff's Brief* at 30-31.

SSR 96–8p requires that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945." The analysis of the physical functions is governed by § 404.1545 which pertains to "sitting, standing, walking, lifting, carrying, pushing, [and] pulling" as well as "manipulative or postural functions, such as reaching, handling, stooping or crouching." *Id.*

Contrary to Plaintiff's contention, the RFC contained a detailed account of his exertional and non-exertional limitations (Tr. 20-21). The ALJ found that Plaintiff was limited to sedentary work (see fn 4, above) with additional postural and manipulative

---

[6]Further, the ALJ noted that Duncan's April, 2010 finding of numerous "marked" limitations was contradicted by another assessment by Duncan performed the same day (Tr. 26, 407-414, 415-423).

limitations (Tr. 20-21).   In regard to the mental limitations, the ALJ made findings as to Plaintiff's limitations in daily living, social functioning, and concentration (Tr. 20).   As discussed in Section **A.**, above, the hypothetical question to the VE and the RFC adequately reflect the record evidence relating to Plaintiff's psychological limitations.   Accordingly, the argument for remand on this basis is unavailing.

### F.  The Step Two Findings

Likewise, Plaintiff's argument that the ALJ erred by failing to include the condition of bilateral cubital tunnel syndrome among the Step Two "severe impairments" does not provide grounds for remand.  *Plaintiff's Brief* at 31-32.  *Maziarz v. Secretary of Health & Human Services,* 837 F.2d 240, 244 (6th Cir.1987)(the omission of one of the severe impairments at Step Two is harmless error provided that the condition is considered in the remaining steps of the sequential analysis).    The ALJ addressed treatment and limitations as a result of this condition in the administrative decision, noting that despite essentially "mild" findings, the RFC for sedentary work was crafted to ensure no "exacerbation of symptomatology" (Tr. 27).

### G.  Plaintiff's Combined Impairments

Likewise, Plaintiff's argument that the ALJ failed to consider the combined effects of his various conditions is without merit.  *Plaintiff's Brief* at 32-33.  While he argues that the condition of sinus tachycardia ought to have been considered in crafting the RFC, he cites no record evidence to support the claim.   His argument that the ALJ did not consider his alleged need to hold a cane while standing, as discussed in Section **A,** above, does not provide grounds for remand.  Plaintiff's final, generalized argument that the ALJ's failure to abide by Sixth Circuit case law, the applicable statutes and regulations, requires remand

need not be addressed, given that his individual arguments for remand have been discussed at length.

### H.  The Sentence Six Material [Docket #12]

Plaintiff also argues that he is entitled to a "Sentence Six" remand based on material submitted to the Appeals Council subsequent to the ALJ's June 15, 2010 decision. *Plaintiff's Brief* at 7-9, *Docket #12*.

Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."  As such,  this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

None of the material submitted after the ALJ's opinion was issued provides grounds for a Sentence Six remand.  A March, 2009 imaging study showing the presence of scar tissue is a duplicate of a study already considered by the ALJ (Tr. 346, 429) and is thus not "material" to the ALJ's original decision.  *See Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 711 (6th Cir.1988) (To show that the newer evidence is material,

Plaintiff "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence").

Further, Dr. Go's February, 2012 statement that Plaintiff needed a "walking cane to assist him in *standing* or walking" (Tr. 221)(emphasis added) and a non-examining "vocational" review of the ALJ's decision stating that an individual requiring a cane for standing could not perform any of the jobs listed by VE Brooks  were clearly prepared as a rebuttal to the ALJ's decision (Tr. 427-428). "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability. *Haney v. Astrue,* 2009 WL 700057, *6 (W.D.Ky.2009)( citing *Thomas v. Secretary,* 928 F.2d 255, 260 (8th Cir., 1991)).   Plaintiff's counsel, by his own admission, submitted these materials to rebut the ALJ's "erroneous" conclusion that Plaintiff would not require a cane for standing. *Docket #12* at pg. 2.   Although Plaintiff cites Dr. Go's June, 2009 records to establish that the previous record showed that Plaintiff required the use of a cane (even when stationary) these records state only that Plaintiff's "uses cane" (Tr. 363).   Because Plaintiff has not established good cause for the consideration of the newer records, the motion for a remand for consideration of these records should be denied.

## CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment pursuant to the fourth sentence of 42 U.S.C. 405(g) [Docket #9] be GRANTED to the extent that this case be remanded for further fact-finding, and that his Motion for Remand pursuant to the sixth sentence of 42 U.S.C. 405(g) [Docket #12] be DENIED.

For the same reasons, I recommend that Defendant's Motions for Summary Judgment [Docket #18 and #22] be DENIED to the extent that they seek affirmance of the administrative decision.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: September 3, 2013

**CERTIFICATE OF SERVICE**

       I hereby certify on September 3, 2013, I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on September 3, 2013: **None**

                        s/Terri L. Hackman

                        Judicial Assistant to

                        Magistrate Judge R. Steven Whalen

                        (313) 234-5115